ZACHARY W. CARTER, ESQ.
Corporation Counsel of the City of New York
Attorney for Defendant the City of New York
100 Church Street, Room 20-093
New York, New York 10007
Of Counsel: Gerald E. Singleton, Esq. (GS-4750)
Office: (212) 356-2036
Fax: (212) 356-2038
Cell: (917) 734-7906
gsinglet@law.nyc.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

CITY OF NEW YORK,

                               Plaintiff,

        -against-

TAVERN ON THE GREEN INTERNATIONAL LLC,

                               Defendant.

------------------------------------------------------------------------ X

**ECF CASE**

17 Civ. 1376

**COMPLAINT**

        Plaintiff, the City of New York (the "City"), for its Complaint against defendant Tavern on the Green International LLC ("Defendant"), alleges as follows:

## THE PARTIES

        1.     The City is a municipal corporation organized pursuant to the laws of the State of New York.

        2.     Upon information and belief, Defendant is a domestic limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business located at 8 Somerset Road, Tenafly, NJ 07670.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the City's claims pursuant to 15 U.S.C. § 1121 (trademark) and 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), 1338(a) (trademark), 1338(b) (unfair competition) and 1367 (supplemental jurisdiction), and the doctrine of supplemental and pendent jurisdiction. The parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this district and Defendant is subject to personal jurisdiction in this district.

5. The City is the owner of the legendary and world famous TAVERN ON THE GREEN restaurant in Central Park in New York City, which has been operated by concessionaires of the City since 1934.

6. The TAVERN ON THE GREEN restaurant is located in Central Park near West 67th Street in New York City on premises that were originally designed by Jacob Wrey Mould and built in 1870 as a sheepfold.

7. TAVERN ON THE GREEN is known for, among other things, its location and the structure; it is an iconic example of the Victorian Gothic style of architecture and is the best surviving work of the British architect Jacob Wrey Mould.

8. Based on the longstanding use of the name TAVERN ON THE GREEN by the City's concessionaires, the name TAVERN ON THE GREEN has acquired secondary meaning and become inseparably and singularly associated in the minds of consumers with the City and the restaurant at its location in Central Park in the landmark premises it occupies.

9. Over the years, the TAVERN ON THE GREEN restaurant has served millions of guests and for many years it was one of the highest grossing restaurants in the United States.

10. TAVERN ON THE GREEN has become a legendary institution attracting numerous celebrities and enjoying vast amounts of unsolicited media attention over the years.

11. TAVERN ON THE GREEN has been a featured location in many motion pictures and television shows and it is widely known as the finish line for the annual New York City Marathon.

12. The City is the owner of the mark TAVERN ON THE GREEN (the "TAVERN ON THE GREEN Mark") as reflected by U.S. Registration No. 1154270, registered on May 12, 1981, for TAVERN ON THE GREEN in International Class 42 for restaurant services (the "Restaurant Registration"). A copy of the certificate of registration and print-outs of the information from the electronic database records of the United States Patent and Trademark Office ("USPTO") showing the current status and title of the Restaurant Registration are attached hereto as Exhibit 1.

13. The City has complied with all requirements necessary to maintain the Restaurant Registration, which is now incontestable under 15 U.S.C. § 1065.

14. The application for the Restaurant Registration was filed in 1978 by the concessionaire then operating the TAVERN ON THE GREEN restaurant, but the application failed to disclose the City's interest in the TAVERN ON THE GREEN restaurant and the TAVERN ON THE GREEN Mark.

15. In 2009, the City filed an action in the United States District Court for the Southern District of New York, captioned *The City of New York v. Tavern on the Green, L.P.,*

*and Leroy Adventures, Inc.,* No. 09 Civ. 9224 (MGC), seeking a declaration that the City was the exclusive owner of the TAVERN ON THE GREEN Mark and an order directing the transfer of the Restaurant Registration to the City.

16. On March 10, 2010, the District Court granted partial summary judgment to the City, holding that the Restaurant Registration had been procured through fraud on the USPTO, in that the application for the Restaurant Registration filed by the City's licensee/concessionaire had failed to disclose that the applicant operated the TAVERN ON THE GREEN restaurant under contract with the City. A copy of the March 10, 2010 decision is annexed hereto as Exhibit 2.

17. Subsequent to Court's March 10, 2010 decision, a Trustee in Bankruptcy was appointed for the Tavern on the Green L.P. and Leroy Adventures, Inc.

18. On April 8, 2010, the United States District Court for the Southern District of New York entered an Order at the request of the City and the Trustee in Bankruptcy, which directed the assignment of the Restaurant Registration and any goodwill appurtenant thereto by the Trustee in Bankruptcy to the City. A copy of said Order is annexed hereto as Exhibit 3.

19. The City and Defendant entered into a written Use Agreement dated October 10, 2011. A copy of the Use Agreement between the parties is annexed hereto as Exhibit 4.

20. The Use Agreement provided for a concurrent use arrangement with the City as the owner of the TAVERN ON THE GREEN Mark and Restaurant Registration and the Defendant's limited use of the name Tavern on the Green (not under license from the City). Defendant's rights to the use of the name Tavern on the Green for goods or for restaurant services were strictly limited to avoid confusion and to prevent Defendant from encroaching on

the City's well-known and famous brand and preventing uses by the Defendant in ways that confused consumers and caused conflict between the City and Defendant.

21. Among other things, the Use Agreement provided that the City would not object to Defendant's use of the name Tavern on the Green for restaurants and products if Defendant complied with limitations and territorial restrictions and the use of name qualifiers and disclaimers intended to make clear to consumers that the parties are not related or affiliated with each other in any manner, and that Defendant's product and services are not licensed, sponsored or endorsed by the City or connected with the City's Central Park location.

22. Sections 2.04(c) and 3.04(b) of the Use Agreement prohibit Defendant from mentioning Central Park or using any pictures or depictions of Central Park or Central Park structures in conjunction with any use of the name Tavern on the Green for restaurants and products.

23. Defendant does not own or operate, and has never owned or operated, any restaurant in the United States.

24. Defendant breached the Use Agreement by, among other things, (i) failing to use the disclaimers required by the Use Agreement on all products and promotional materials; (ii) by improperly trading on the goodwill associated with the City's TAVERN ON THE GREEN restaurant in direct violation of the Use Agreement; and (iii) by falsely stating in promotional materials that it was a licensee of the City, as detailed in correspondence between the parties, copies of which are collectively annexed hereto as Exhibit 5.

25. Pursuant to the terms of the Use Agreement, the City gave written notice to Defendant by letter dated April 13, 2016, that it was revoking its consent to the use of the name Tavern on the Green by Defendant. A copy of said letter is annexed hereto as Exhibit 6.

26.     Notwithstanding the City's revocation of consent to Defendant's use of the name Tavern on the Green, Defendant is knowingly and willfully continuing to use the name Tavern on the Green to offer restaurant franchises and on salad oils and other products without the City's consent, and is trading on the City's goodwill and associating itself with the City's iconic TAVERN ON THE GREEN restaurant in Central Park.

27.     In or about August 2016, Defendant retained MBB Productions LLC, d/b/a Mbb Management, as a consultant to help it sell restaurant franchises under the name Tavern on the Green.

28.     MBB Productions LLC, d/b/a Mbb Management maintains a website at www.mbbmanagement.com on which it has posted the following false and deceptive statements, acting with the knowledge and approval and on behalf of its client, the Defendant:



## TAVERN ON THE GREEN

Tavern on the Green is an iconic, landmark restaurant unlike any other. Centered around a hearty, rustic menu shaped by local, seasonal ingredients, Tavern on the Green invites patrons into a warm, celebratory gathering space that captures the spirit of Central Park and the energy of New York City.

*Not affiliated with Tavern on the Green in Central Park in New York City

http://www.mbbmanagement.com/clients/

## August 2016



MBB has officially begun national and international expansion of one of the most iconic U.S. restaurants of all time. *Not affiliated with Tavern on the Green in Central Park in New York City.

http://www.mbbmanagement.com/timeline/

\*\*\*

# MBB Unveils "Tavern on the Green" to the World!
by Mike Muller
August 9, 2016 3:15 PM





MBB is proud to announce that Tavern on the Green International is taking that special, unique, pampered and iconic experience 'on the road' to people outside the tri-state area. The Company is establishing a boutique network of restaurants to evoke a feeling of escape for the consumer. Restaurants will bring to mind memories of original visits to the space in New York City but they will be updated to offer the warm service, aesthetic and contemporary atmosphere that people have come to expect of restaurants as the new 'accessible' private club.

The very mention of the "Tavern on the Green" brings a smile to the face of any past guest as memories of magical moments cross their mind. Many famous **celebrities** such as **Dan Aykroyd, Halle Berry, Liv Tyler, Elijah Wood** and countless others have visited the original location in New York City's Central Park. **John Lennon** actually spent many of his birthdays there. A trip to Central Park was incomplete without going to the legendary Tavern on the Green restaurant that operated from 1934 to 2009. Such was the restaurant's fame that it was the 4th most visited tourist attraction in the city. For more than 30 years Tavern on the Green was synonymous with Central Park, & no trip to New York was complete without visiting the twinkling lights and red awning of this historic landmark. The name Tavern on the Green transcended a restaurant and became an icon of romance, celebrity, luxury, and of the best that New York has to offer.



Franchising opportunities offer its clientele fine dining, distinctive cuisine, legendary ambience, and access to the Tavern On The Green® all natural gourmet products, signature dishes, secret recipes, coffees and tea and beautiful housewares and home decor. Franchisees will have access to additional proprietary processes, products, recipes and items that are currently in various stages of production and/or development. The Franchisee will also benefit from the global appeal and recognition of that world famous restaurant located in Central Park in the City of New York. The Tavern on the Green Franchise however, is not affiliated with Tavern on the Green in Central Park in New York City.



http://www.mbbmanagement.com/restaurant-franchising/mbb-unveils-tavern-green-world/

29. The foregoing statements falsely suggest to consumers and/or prospective investors/franchisees that Defendant is related in some fashion to the iconic TAVERN ON THE GREEN restaurant in Central Park, and that the statements are approved by the City as the owner of the TAVERN ON THE GREEN Mark.

30. The statement that "Tavern on the Green is an iconic, landmark restaurant unlike any other. Centered around a hearty, rustic menu shaped by local, seasonal ingredients, Tavern on the Green invites patrons into a warm, celebratory gathering space that captures the spirit of Central Park and the energy of New York City" is plagiarized and copied verbatim from the website for the City's TAVERN ON THE GREEN restaurant in Central Park and its concessionaire. See http://www.tavernonthegreen.com/about-the-restaurant.

## COUNT I
### (Infringement of Registered Mark)

31. The City repeats and re-alleges the allegations of paragraphs 1 through 30 as though fully set forth herein.

32. The City owns valid and subsisting Restaurant Registration for the TAVERN ON THE GREEN Mark as heretofore alleged, which has been and continues to be used in commerce.

33. Defendant is using the TAVERN ON THE GREEN Mark to offer and promote restaurant franchises that are not affiliated with the City without the permission or consent of the City.

34. Such use of the TAVERN ON THE GREEN Mark in interstate commerce without the approval of the City constitutes trademark infringement actionable under Section 32 (1) (a) of the Lanham Act, 15 U.S.C. § 1114 (1)(a).

35. Defendant has acted willfully and purposely with the intention of misleading the public into believing that restaurant franchises bearing the TAVERN ON THE GREEN Mark may be lawfully sold to the public.

36. If the promotion and sale of restaurant franchises bearing the TAVERN ON THE GREEN Mark by Defendant is not enjoined by this Court: (a) the public will be confused, misled and deceived as to the source and origin of Defendant's Tavern on the Green restaurants and ancillary products and will mistakenly assume that restaurants and ancillary products are authorized, sponsored, approved or produced by or for the City or its agencies, or that Defendant is affiliated with the City or its agencies; (b) consumers and prospective franchises will be misled into purchasing unauthorized services and ancillary products bearing the TAVERN ON THE GREEN Mark, causing dilution and irreparable damage to the distinctive value and reputation of the TAVERN ON THE GREEN Mark; (c) Defendant will be unjustly enriched by his misappropriation of the substantial goodwill of the TAVERN ON THE GREEN Mark.

37. The City has no adequate remedy at law.

38. By reason of the foregoing, the City has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1114 et seq., including injunctive relief, damages and attorneys' fees.

## COUNT II
### (False Designation of Origin in violation of 15 U.S.C. § 1125(a))

39. The City repeats and re-alleges the allegations of paragraphs 1 through 38 as though fully set forth herein.

40. Defendant's use of TAVERN ON THE GREEN in interstate commerce in connection with the marketing, promotion of restaurant services and ancillary products that are not approved by the City constitutes a false designation of origin and/or a false description or representation, including words or symbols tending falsely to describe or represent the same, actionable under Sections 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. Notwithstanding its use of a disclaimer, Defendant has acted willfully and purposely with the intention of misleading the public into believing its services and products originate with the City, are licensed by the City, or are in some way sanctioned by or affiliated with the City or its agencies or its iconic Central Park location.

42. By reason of the foregoing, the City has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1114 et seq., including injunctive relief.

## COUNT III
### (Dilution in Violation of 15 U.S.C. § 1125(c))

43. The City repeats and re-alleges the allegations of paragraphs 1 through 42 as though fully set forth herein.

44. The City's TAVERN ON THER GREEN Mark is inherently distinctive and famous, and through many years of use by the City has come to represent the highest standards of quality and service.

45. Defendant's use of imitations of the famous and distinctive TAVERN ON THE GREEN Mark constitutes a commercial use in commerce of a mark or trade name, which has caused and will continue to cause irreparable dilution of the distinctive quality of the City's TAVERN ON THE GREEN Mark.

46. Defendant has willfully intended to trade on the City's reputation and/or the reputation of its iconic restaurant in Central Park and to cause dilution of the City's famous and distinctive TAVERN ON THE GREEN Mark in violation of 15 U.S.C. § 1125(c).

47. By reason of the foregoing, the City is entitled to damages and injunctive relief.

## COUNT IV
### (Common Law Unfair Competition)

48. The City repeats and re-alleges the allegations of paragraphs 1 through 47 as though fully set forth herein.

49. Defendant's unauthorized use of the City's TAVERN ON THE GREEN Mark constitutes misappropriation and infringement of such trademark, actionable under the law of unfair competition.

50. By reason of the foregoing, the City has been injured in an amount not yet ascertained.

## COUNT V
### (Deceptive Trade Practices and False Advertising In Violation of New York General Business Law Sections 349, 350 and 350-e)

51. The City repeats and re-alleges the allegations of paragraphs 1 through 50 as though fully set forth herein.

52. Defendant's misappropriation and infringement of the City's TAVERN ON THE GREEN Mark represents a deliberate attempt to mislead consumers into believing that Defendant's restaurant services and ancillary products are authorized, sponsored, or otherwise affiliated with the City and/or its iconic Central Park location and restaurant.

53. By engaging in such false and misleading marketing of its services and products, via a website accessible to consumers in New York, Defendant has engaged in deceptive acts or practices in violation of New York General Business Law § 349 and false advertising in violation of New York General Business Law §§ 350 and 350-e.

54. Such violations have resulted, upon information and belief, have substantially harmed the City.

55. By reason of the foregoing, the City is entitled to the remedies provided for in New York General Business Law §§ 349, 350 and 350-e.

**WHEREFORE,** the City prays that this Court:

A. Declare that Defendant, by the acts complained of herein, has infringed the City's TAVERN ON THE GREEN Mark and competed unfairly with the City, and that the acts complained of herein will damage and diminish the distinctiveness of the TAVERN ON THE GREEN Mark unless enjoined by this Court;

B. Order that Defendant, and all other persons acting in concert or participation with him, be permanently enjoined from further acts of trademark infringement, dilution, or unfair competition, and particularly from, in any manner, directly or indirectly:

(a) using or otherwise infringing the City's TAVERN ON THE GREEN Mark;

(b) using any mark or indicia that incorporates TAVERN ON THE GREEN Mark;

(c) selling, marketing, or otherwise using any simulation, reproduction, counterfeit, copy, colorable imitation or confusingly similar imitation of the TAVERN ON THE GREEN Mark, or marketing, advertising or displaying series or goods in any way that tends to deceive, mislead or confuse the public into believing that Defendant's services and products are in any way sanctioned by or affiliated with the City or its agencies or its iconic Central Park location;

(d) using any false designation of origin or false description (including, without limitation, any letters or symbols) which can, or is likely to, lead the trade or public to believe that any service or product manufactured, advertised, distributed and/or sold by Defendant is in any manner associated or connected with the City or its iconic Central Park location, or is sold, licensed, sponsored, approved or authorized by the City;

(e) otherwise competing unfairly with the City, its agencies, or its authorized licensees; and

(f) diluting the distinctive quality of the TAVERN ON THE GREEN Mark; and

(g) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

C. Order that Defendant be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of the TAVERN ON THE GREEN Mark;

D. Order that Defendant be required to account for and pay over to the City all gains, profits and advantages realized from the sale of infringing merchandise or services;

E. Order that Defendant be directed to file with this Court and serve on the City within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

F. Enter judgment against Defendant for damages, in an amount to be determined, that the City has sustained as a consequence of Defendant's acts of trademark infringement, unfair competition, deceptive and unfair practices and trademark dilution, including trebled damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and, if the City so elects, statutory damages for willful infringement of the TAVERN ON THE GREEN Mark

under 15 U.S.C. § 1117; plus the City's costs, expenses and reasonable attorney fees in connection with this action as provided in 15 U.S.C. § 1117; and

G. Such other, further and different relief as this Court deems just and proper.

Dated:  New York, New York
        February 24, 2017

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendant*
100 Church Street, Room 20-093
New York, New York 10007
(212) 356-2036

By: *[signature]*
    Gerald E. Singleton (GS-4750)