# Exhibit 3



| | | |
|---|---|---|
| ZACHARY W. CARTER<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>LAW DEPARTMENT<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Gerald E. Singleton<br>Phone: (212) 356-2036<br>Fax: (212) 356-2038<br>E-mail: gsinglet@law.nyc.gov |

February 16, 2017

Via Email
Jerry Dunne, Esq.
Gerard F. Dunne, P.C.
41 Union Square West
Suite 1125
New York, NY 10003
jerry.dunne@dunnelaw.net

Re: Tavern on the Green Use Agreement

Dear Jerry:

I am writing in response to your letter dated January 10, 2017 (sent and received by email on February 10, 2017) and as a follow up to our meeting on Tuesday with your clients Ernie Bivona and Kevin J. Tierney, who identified themselves respectively as the Vice President of Product Development & Licensing and the Chief Financial Officer of Tavern on the Green International. The reason for this letter is that your clients remain in breach of the terms of the Use Agreement.

The terms of the Use Agreement are clear and unambiguous. The Use Agreement was negotiated by the City and the Trustee in Bankruptcy over the course of many months, and was part of a stipulated settlement agreement that was judicially approved by the United States District Court and the Bankruptcy Court for the Southern District of New York. It is not subject to renegotiation or modification at this point.

Section 2.04 (c) of the Use Agreement states that "[n]o use of the Concurrent User's Mark and Current Logo by the Concurrent User shall mention Central Park, or feature any pictures or other depictions of Central Park or any Central Park structures, including pictures or other depictions of the Central Park Location or any other City trade or service marks, in conjunction with use of the Mark by the Concurrent User, without the prior written consent of the City."

Jerry Dunne, Esq.
February 16, 2017

Yesterday, your clients stated that they have retained Mbb Management as a restaurant licensing consultant. The Mbb website contains the following statements, which clearly violate Section 2.04(c):

## Mbb is proud to announce a partnership with Tavern on the Green to expand nationally and internationally

Tavern on the Green is an iconic, landmark restaurant unlike any other.

Centered around a hearty, rustic menu shaped by local, seasonal ingredients, Tavern on the Green invites patrons into a warm, celebratory gathering space that captures the spirit of Central Park and the energy of New York City.

*Not affiliated with Tavern on the Green in Central Park in New York City.



http://www.mbbmanagement.com/partners/tavern-on-the-green/.

Tavern on the Green International has never operated a restaurant and, therefore, the statement that "Tavern on the Green is an iconic, landmark restaurant" could only be understood by consumers to refer to the Tavern on the Green restaurant in Central Park operated by the City, particularly when coupled with the statement that "Tavern on the Green invites patrons into a warm, celebratory gathering space that captures the spirit of Central Park and the energy of New York City." The bolded statement that "Mbb is now in partnership with Tavern on the Green to expand nationally and internationally" is patently false.

It is hard to imagine a more clear-cut violation of the plain language of Section 2.04(c). Your clients are using Mbb to foster the false impression that they control the Tavern on the Green brand and running a global enterprise in which the Central Park location may be the nominal hub. The false impression created by your clients and Mbb is actionable as reverse confusion.

Reverse confusion is the misimpression that the junior user is the source of the senior user's goods or services. 2 T. McCarthy, TRADEMARKS AND UNFAIR COMPETITION, at § 23:1(E) (2d ed. 1984). Reverse confusion is actionable under § 43(a) of the Lanham Act. *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 491 (2d Cir. 1988). "A 'reverse confusion' situation exists where the junior user is able to amass such trademark strength in its imitative mark that the

2

Jerry Dunne, Esq.
February 16, 2017

senior user's products become associated with the junior user in the minds of consumers." *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 388n.3 (2d Cir. 2005).

Your clients' strict compliance with the terms and limitations on use of the name "Tavern on the Green" for restaurant services and products, as set forth in Sections 2 and 3 of the Use Agreement, is an express condition precedent to the City's performance of its obligation not to object to your clients' applications for trademark registrations. See Sections 2.04 and 3.02. The argument that your client's breaches are not material lacks merit. The doctrine of substantial performance is inapplicable. Section 12 of the Use Agreement, which set forth the City's remedies for breach, makes clear that the City has a right to revoke its consent to use of the Tavern on the Green mark by your clients in the event of a breach of the limitations under Sections 2 and 3 "other than a *de minimis* breach." [1]

A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." (Calamari and Perillo, Contracts § 11-2, at 438 [3d ed.]; see RESTATEMENT [SECOND] OF CONTRACTS § 224; see also *Merritt Hill Vineyards v. Windy Hgts. Vineyard*, 61 N.Y.2d 106, 112-13 (1984). Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract.

As the New York Court of Appeals explained in *Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685, 690 (1995), express conditions are those agreed to and imposed by the parties themselves and "must be literally performed." The Court noted that "substantial performance is ordinarily not applicable to excuse the nonoccurrence of an express condition precedent." Id. at 693. See also 5 Williston, Contracts § 669, at 154 [3d ed.] ("Since an express condition ... depends for its validity on the manifested intention of the parties, it has the same sanctity as the promise itself. Though the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties unless to do so will violate public policy."); RESTATEMENT [SECOND] OF CONTRACTS § 237, comment d, at 220 (If the parties "have made an event a condition of their agreement, there is no mitigating standard of materiality or substantiality applicable to the non-occurrence of that event.")

As the Court of Appeals also noted in *Oppenheimer*, "[f]reedom of contract prevails in an arm's length transaction between sophisticated parties such as these, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain. If they are dissatisfied with the consequences of their agreement, 'the time to say

---

[1] Exhibit C to the Use Agreement requires that the disclaimer specified in Sections 2.03(b) and 3.04(a) accompany all uses of the Tavern on the Green Mark, including business cards, print advertising and website uses. We note that there is no disclaimer on Mr. Bivona's business card and that the disclaimer on the Mbb website does not comply with Exhibit C regarding color, bold face type, location of disclaimer and font and type size. These failures and omissions are not *de minimis* breaches.

Jerry Dunne, Esq.
February 16, 2017

so [was] at the bargaining table.'" Id. at 695 (quoting Maxton Builders, Inc. v. *Lo Galbo*, 68 N.Y.2d 373, 382 (1986). See also (RESTATEMENT [SECOND] OF CONTRACTS § 229, comment a, at 185; see § 227, comment b [where language is clear, "(t)he policy favoring freedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results"]).

The Use Agreement is not a license and it confers no rights on your clients to use the City's Tavern on the Green restaurant trademark. As discussed at our meeting, the Use Agreement was intended to allow the Concurrent User to build its own brand and develop its own goodwill. It does not permit your clients to trade on the City's goodwill or its iconic Central Park location.

Your clients have requested that the City consider modifications to the Use Agreement in exchange for a share of royalties from your clients' use of the Tavern on the Green mark for restaurants and products, presumably by softening or eliminating the territorial restrictions and disclaimer requirements and express limitations on use and advertising in the current agreement. The City has no interest in becoming partners in a national or global business with your clients. The City has no control over your client's affairs or the quality of its products and services and has no desire to be associated with them.

We demand that your clients instruct and their agent Mbb Management to remove the statements described above from the Mbb website forthwith and refrain from making any reference to Central Park or to New York City in any promotional or other materials. To be clear, we adhere to the position set forth in our prior letters regarding the breaches by your clients and the revocation of the City's consent to any concurrent use under the Use Agreement.

Nothing contained herein is to be construed as a waiver of any of the City's rights and remedies under the Use Agreement, or the Lanham Act, all of which are hereby expressly reserved.

Sincerely yours,

*Gerald E. Singleton*
Gerald E. Singleton

4

Gerald E. Singleton
Assistant Corporation Counsel
January 10, 2017
page 3

    Gerry, please do not waste this opportunity; we are well funded and very serious about proceeding forward with our damage claims against the City.

                                      Sincerely yours,

                                      Gerard F. Dunne

GFD:jd