UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 17-cv-1376 (RJS)

CITY OF NEW YORK,

Plaintiff,

VERSUS

TAVERN ON THE GREEN INTERNATIONAL LLC,

Defendant.

MEMORANDUM AND ORDER
September 28, 2018

RICHARD J. SULLIVAN, District Judge:

Plaintiff, the City of New York (the "City"), brings this action for breach of contract, trademark infringement, false designation of origin, dilution, unfair competition, and violations of the New York General Business Law, alleging that Defendant Tavern on the Green International LLC ("TOGI") breached a contract between the parties and misappropriated the goodwill associated with a federally-registered trademark related to the iconic Central Park eatery Tavern on the Green. Defendant TOGI raises a single counterclaim, contending that it was the City, not TOGI, that violated the parties' agreement. Now before the Court are the parties' cross-motions for summary judgment on all claims. For the reasons set forth below, the City's motion is GRANTED in part and DENIED in part, and TOGI's motion is DENIED.

I. BACKGROUND

A. The Parties

Plaintiff is the City of New York, a "municipal corporation organized pursuant to the laws of the State of New York."[1] (Pl.

---

[1] In resolving the parties' motions, the Court has considered the City's Local Civil Rule 56.1 Statement in support of its motion (Doc. No. 52-1 ("Pl. 56.1")), TOGI's counterstatement (Doc. No. 55-4 ("Def. Opp'n 56.1")), TOGI's Local Civil Rule 56.1 Statement in support of its motion (Doc. No. 49-2 ("Def. 56.1")), the City's counterstatement (Doc. No. 54-1 ("Pl. Opp'n 56.1")), TOGI's rebuttal (Doc. No. 59-1 ("Def. Reb. 56.1")), the City's supplemental Local Civil Rule 56.1 Statement (Doc. No. 74 ("Pl.

56.1 ¶ 1.) The City owns the Tavern on the Green restaurant (the "Central Park Location"), which is located in Central Park and which has been operated by concessionaires of the City since 1934. (Pl. 56.1 ¶ 4.)

Tavern on the Green International LLC is a New Jersey limited liability company with its principal place of business in New Jersey. (Pl. 56.1 ¶ 2.) TOGI is the City's counterparty in the contract that is at the heart of this litigation, and is generally in the business of marketing restaurant franchises and cooking products under the "Tavern on the Green" name. (*See* Pl. 56.1 ¶¶ 9; Pl. Opp'n 56.1 ¶ 69.) TOGI does not, however, operate any restaurants of its own. (Pl.

---

Supp. 56.1")), TOGI's supplemental counterstatement (Doc. No. 78 ("Def. Opp'n Supp. 56.1")), TOGI's supplemental Local Civil Rule 56.1 Statement (Doc. No. 76 ("Def. Supp. 56.1")), the City's counterstatement (Doc. No. 79 ("Pl. Opp'n Supp. 56.1")), the declarations submitted in support of and in opposition to the motions and the exhibits thereto, the City's memorandum of law in support of its motion for summary judgment (Doc. No. 52 ("Pl. Mem.")), TOGI's memorandum of law in opposition to the City's motion (Doc. No. 55 ("Def. Opp'n")), the City's reply memorandum of law in support of its motion (Doc. No. 58 ("Pl. Reply")), TOGI's memorandum of law in support of its motion for summary judgment (Doc. No. 49-3 ("Def. Mem.")), the City's memorandum of law in opposition to TOGI's motion (Doc. No. 54 ("Pl. Opp'n")), and TOGI's reply memorandum of law in support of its motion (Doc. No. 59 ("Def. Reply")). On February 13, 27 and 28, 2018, the City and TOGI refiled several of their submissions to correct various technical errors made when filing their summary judgment papers. (*See* Doc. Nos. 56–57, 60–72.) For consistency, the Court cites the parties' initial submissions, not versions that were refiled to correct technical electronic case filing errors. Unless otherwise noted, where only one party's Local Civil Rule 56.1 Statement or counterstatement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact.

Opp'n 56.1 ¶ 69.) TOGI is owned and operated by Louis Bivona. (Pl. 56.1 ¶ 20.)

### B. Facts

In 1978, the City's concessionaire for the operation of the Central Park Location, Warner LeRoy, "applied . . . to register the name 'Tavern on the Green' with the United States Patent and Trademark Office . . . for restaurant services" through his company LeRoy Adventures, Inc. (Pl. 56.1 ¶ 7.) The application contained a number of false or misleading statements, but those inaccuracies were not discovered, *see City of New York v. Tavern on the Green, L.P.* (*TOTG*), 427 B.R. 233, 238–39 (S.D.N.Y. Mar. 10, 2010), and the mark (the "Restaurant Mark") was registered on May 12, 1981, Reg. No. 1,154,270. In 2007, LeRoy Adventures, Inc. and a related company, Tavern on the Green, L.P., also registered the phrase "Tavern on the Green" for cooking oils; the registration (the "Cooking Oil Mark") was issued on September 2, 2008. (Pl. 56.1 ¶ 8; *see also* Reg. No. 3,494,658.)

On September 9, 2009, both LeRoy Adventures, Inc. and Tavern on the Green, L.P. filed voluntary bankruptcy petitions in this district. *See In re LeRoy Adventures, Inc.*, S.D.N.Y. Bankr. Case No. 09-15448-mew, Doc. No. 1; *In re Tavern on the Green L.P.*, S.D.N.Y. Bankr. Case No. 09-15450-mew, Doc. No. 1. On March 10, 2010, Judge Cedarbaum granted partial summary judgment in the City's favor, cancelling the Restaurant Mark for fraud but leaving the Cooking Oil Mark in place. *See TOTG*, 427 B.R. at 236–37.

Following Judge Cederbaum's order, the Bankruptcy Court converted the pending Chapter 11 proceedings into Chapter 7 proceedings, *see In re Leroy Adventures, Inc.*, S.D.N.Y. Bankr. Case No. 09-15448-

mew, Doc. No. 18, and a bankruptcy trustee "was appointed for . . . Tavern on the Green L.P and LeRoy Adventures Inc." (Pl. 56.1 ¶ 12.) At the request of the bankruptcy trustee, Judge Cederbaum subsequently amended her summary judgment order, directing that the Restaurant Mark be transferred to the City and not cancelled. No. 09-cv-9224 (MGC), Doc. No. 42.

On November 1, 2011, the City and TOGI's corporate predecessor entered into the contract (the "Use Agreement") that is at the center of this suit. (Doc. No. 51-5 ("Use Agreement"); *see also* Def. 56.1 ¶ 13.) Under the terms of that agreement, TOGI's corporate predecessor paid $1.3 million for the rights to the Restaurant Mark and the Cooking Oil Mark, subject to certain conditions.

Specifically, the Use Agreement provides that the City owns the Restaurant Mark, has the right to register the Restaurant Mark, and has the right to operate restaurants under the name "Tavern on the Green" in New York City and the surrounding area. (Use Agreement § 2.01.) However, the Use Agreement gives TOGI the right to use the phrase "Tavern on the Green" in connection with restaurant services, so long as the name is "combined with differentiating language in the nature of a geographic or location identifier" and on the condition that TOGI adhere to certain marketing restrictions. (*Id.* §§ 1.08, 2.04(b)–(d).) The Use Agreement explicitly provides for the possibility that TOGI would sublicense its rights in the Restaurant Mark – that is, that TOGI might sell the right to open franchises. (*See id.* §§ 7.01–7.03, 10.02.) However, the Use Agreement specifically bars TOGI from "attempt[ing] to register the Restaurant Mark." (*Id.* § 2.04(f).)

In addition, the Use Agreement provides that TOGI owns the Cooking Oil Mark and that TOGI has the right to register the trademarks involving the phrase "Tavern on the Green" for certain categories of products. (*Id.* §§ 3.01–3.03.) The Use Agreement also permits TOGI to sell products, such as cooking oils and salad dressings, affixed with the phrase "Tavern on the Green," so long as TOGI includes certain disclaimers and complies with various marketing limitations. (*Id.* § 3.04.)

The Use Agreement was intended to run "as long as both Parties" were using the Tavern on the Green marks (*id.* § 12.01), but the parties contemplated the possibility of termination. Specifically, the Use Agreement provides that, following a material breach by TOGI, "the City shall provide written notice . . . of such breach." (*Id.* § 12.02.) In the event that such breach is not cured within twenty business days, the Use Agreement permits the City to "provide written notice to [TOGI] immediately terminating [the Use] Agreement" in whole or in part or to file an appropriate lawsuit. (*Id.*) If the City decided to commence a suit, the parties agreed that "a likelihood of consumer confusion shall be presumed to exist." (*Id.*) Finally, TOGI acknowledged that any un-cured breach would cause "immediate and irreparable injury" to the City. (*Id.* § 12.04.)

The City and TOGI apparently coexisted as users of the two marks for over three years, but the relationship between the two parties began to fray in 2015. Between May of 2015 and February of 2017, the parties exchanged a series of letters regarding TOGI's compliance with the terms of the Use Agreement and the interpretation of the contract's terms. (*See* Doc. Nos. 51-6–51-12, 75-3.) On two instances – August 12, 2015 and April 13, 2016 – the City

3

purported to revoke its consent to TOGI's use of the phrase "Tavern on the Green" for restaurant services (Doc. Nos. 51-9 at 1, 51-12 at 4). The City also purported to revoke its consent to TOGI's use of the term "Tavern on the Green" in connection with "products" in the April 13, 2016 letter. (Doc. No. 51-12 at 4.) However, the City contends that neither revocation letter terminated the Use Agreement, and the parties' business relationship apparently continued in some manner until early 2017. (Pl. Opp'n 56.1 ¶ 21.)

Tensions finally came to a head on February 16, 2017, when Gerald Singleton, an attorney in the City's Law Department, sent a letter to TOGI's attorney claiming that TOGI had violated the Use Agreement. (Doc. No. 75-3.) Specifically, Singleton asserted that MBB Management ("MBB"), a "restaurant licensing consultant" hired by TOGI to market Tavern on the Green restaurant franchises (Pl. Opp'n 56.1 ¶ 69), violated Section 2.04(c) of the Use Agreement when it launched a marketing campaign that invoked "the spirit of Central Park and the energy of New York City" (Doc. No. 75-3 at 2).[2]

C.  Procedural History

Just eight days after its February 16, 2017 letter to TOGI, the City instituted this

action by filing a complaint raising claims for infringement of a registered trademark, false designation of origin, dilution, common law unfair competition, and violations of the New York General Business Law. (Doc. No. 1.) TOGI answered the complaint on May 1, 2017, and asserted seven counterclaims. (Doc. No. 11.) However, on June 9, 2017 – following a pre-motion conference regarding the City's contemplated motion to dismiss TOGI's counterclaims (see Doc. No. 13) – TOGI amended its counterclaims to assert just a single counterclaim for breach of contract (Doc. No. 20). The City answered TOGI's counterclaim on June 15, 2017. (Doc. No. 21.)

The City filed the operative amended complaint on August 30, 2017, adding a claim seeking a declaratory judgment that TOGI had breached the Use Agreement and that the City had properly revoked permission for TOGI to use the name "Tavern on the Green." (Doc. No. 26 ("Compl.").) TOGI answered the amended complaint on September 9, 2017, again raising a single claim for breach of contract (Doc. No. 27), and the City answered the counterclaim on September 15, 2017 (Doc. No. 28).

On January 8, 2018, following the close of discovery, both parties moved for summary judgment. (See Doc. Nos. 49 (TOGI), 50 (City).) The City now seeks summary judgment in its favor on all five of its claims and asks the Court to dismiss TOGI's counterclaim (Pl. Mem. at 1), while TOGI asks only for summary judgment in its favor on its counterclaim (Def. Mem. at 5). The City opposed TOGI's motion on February 11, 2018 (see Doc. No. 54) and TOGI opposed the City's motion on February 12, 2018 (see Doc. No. 55). Both parties filed their replies on February 26,

---

[2] The parties' letters were not their only interactions between 2011 and 2017. On April 3, 2015, the United States Patent and Trademark Office ("PTO") cancelled the Cooking Oil Mark because TOGI failed to file an acceptable statement of continuing use. (Pl. 56.1 ¶ 37.) On February 25, 2016, TOGI filed an application to register the phrase "Tavern on the Green" as a trademark in connection with salad dressing and cooking oils. *See* U.S. Trademark Application Serial No. 86,919,319. The City opposed the registration on December 13, 2016. *See id.* The PTO has not yet rendered a decision on the application. *Id.*

2018. (Doc. Nos. 58, 59.) On July 26, 2018, the Court issued an order directing the parties to file "supplemental Local Rule 56.1 Statements regarding their compliance with, and their opponent's non-compliance with, Section 12.02 of the Use Agreement" – the notice and cure provision. (Doc. No. 73.) The parties each filed their submissions on August 1, 2018 (*see* Doc. Nos. 74–76) and opposition papers on August 8, 2018 (Doc. No. 77–79).

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "On cross-motions for summary judgment, each moving party 'has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor.'" *McDonnell v. First Unum Life Ins. Co.*, No. 10-cv-8140 (RPP), 2013 WL 3975941, at *13 (S.D.N.Y. Aug. 5, 2013) (quoting *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988)).

## III. DISCUSSION

### A. Witness-Advocate Rule

In a threshold challenge to the City's evidence, TOGI asserts – in both its opposition to the City's motion and its reply in support of its own summary judgment motion – that the declarations submitted by

the City's counsel, Gerald Singleton, should be discounted pursuant to the "witness-advocate rule." (Def. Opp'n at 7–8; Def. Reply at 2–3.) The witness-advocate rule, which finds its footing in Rule 3.7 of the New York Rules of Professional Conduct, "provides in relevant part that '[a] lawyer should not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact.'" *Goodwine v. City of New York*, No. 15-CV-2868 (JMF), 2016 WL 379761, at *4 (S.D.N.Y. Jan. 29, 2016) (quoting N.Y. R. Prof'l Conduct § 3.7(a)). But even assuming, for the purposes of the instant motions, that Mr. Singleton's testimony is necessary to resolve a significant issue of fact, the Court will not bar or disregard his declarations at this stage of the proceedings.

As should be obvious from even a cursory review of Rule 3.7, there is no *per se* prohibition against attorneys testifying on behalf of their clients. *See Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282–83 (2d Cir. 2004). Indeed, the very existence of the witness-advocate rule acknowledges the possibility of such testimony. Instead of precluding lawyers from testifying, the rule aims to avoid the jury confusion that may occur "when one individual assumes the role of both advocate and witness," *id.*, and to guard against "harm to the integrity of the judicial system," *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). To that end, the Second Circuit has suggested that "the remedy where an attorney is called to testify may be to disqualify the attorney in his *representational* capacity, not necessarily his *testimonial* capacity." *Ramey*, 378 F.3d at 283.

Following the Circuit's suggestion, Judge Keenan concluded in *Samad Brothers, Inc. v. Bokara Rug Co., Inc.* that, to

effectuate its purposes, Rule 3.7(a) only "requir[es] an advocate-witness to withdraw from the representation in which he or she is acting as trial counsel," and that "the advocate-witness rule does not provide a basis for the exclusion of otherwise admissible evidence." 09-cv-5843 (JFK), 2012 WL 1604849, at *4 (S.D.N.Y. May 8, 2012). At this stage of the litigation – well before a trial date has been set or a jury empaneled – the Court agrees that the policy goals of Rule 3.7(a) are not served by disregarding admissible evidence and that there is nothing in the text of Rule 3.7 that requires, or even permits, the Court to do so. Accordingly, the Court will not disregard or discount Singleton's declarations pursuant to the witness-advocate rule. Rather, the Court will turn to the merits of the parties' competing motions.

## B. Breach of Contract

Both parties move for summary judgment on their claims for breach of contract. The City, relying on letters it sent to TOGI over the course of the parties' business relationship, asserts that TOGI materially breached the Use Agreement by failing to use the disclosures required by Section 3.04(a) and improperly referring "to the fame and success of the [Tavern on the Green] restaurant" in violation of Section 2.04(c). (Pl. Mem. at 17.) TOGI, on the other hand, contends that the City violated the implied duty of good faith and fair dealing throughout the parties' business relationship and that the City violated Sections 2.04(f) and 11.02 of the Use Agreement when it opposed TOGI's attempt to register a trademark involving the phrase "Tavern on the Green." (Def. Mem. at 5; Def. 56.1 ¶ 20.) For the reasons discussed below, the City's Section 3.04(a) argument fails, but its Section 2.04(c) argument succeeds. The City is also entitled to

summary      judgment      on      TOGI's counterclaim.

To make out a claim for breach of contract, the party seeking recovery must prove "(1) the existence of an agreement, (2) the adequate performance of the contract by [that party], (3) breach of the contract by the [counterparty], and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "[A] party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain" – that is, when the other party "has committed a material breach." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016). A breach is material where it goes "to the root of the agreement between the parties." *Id.* (quoting *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989)).

In addition to the explicit terms of the contract, New York law implies a covenant of good faith and fair dealing. *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*In re LIBOR*), 962 F. Supp. 2d 606, 631–32 (S.D.N.Y. 2013). "Specifically, implied in every contract is a promise that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). Put another way, "[t]he implied covenant of good faith and fair dealing bars a party from taking actions 'so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties.'" *LJL 33rd Street Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) (quoting *Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991)). The implied covenant of good faith and fair dealing does not,

however, reach so far as to govern every interaction between parties to a contract – it "arises 'only in connection with the rights or obligations set forth in the terms of the contract.'" *In re LIBOR*, 962 F. Supp. 2d at 632 (quoting *Paul v. Bank of Am. Corp.*, No. 09-cv-1932 (ENV) (JMA), 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011)).

### 1. The City's Breach-of-Contract Theories

The City asserts that TOGI breached two provisions of the Use Agreement over the course of the parties' business relationship – Section 3.04(a), which regulates TOGI's use of the Cooking Oil Mark, and Section 2.04(c), which governs TOGI's use of the Restaurant Mark. The Court will address each in turn.

#### a. Alleged Violations Involving the Cooking Oil Mark

The City contends that TOGI, on more than one occasion, failed to comply with Section 3.04(a) by not using the disclaimers required by the Use Agreement. (*See* Pl. Mem. at 17 (referring to TOGI's "repeated breaches in failing to use required disclaimers"); *see also id.* at 6.) Although the City does not actually identify the instances in which TOGI supposedly failed to use proper disclaimers in its motion, a review of the correspondence filed in connection with the City's motion reveals two instances in which the City accused TOGI of running afoul of Section 3.04(a).

First, in its July 16, 2015 letter, the City accused TOGI of submitting "product specimens" that did not contain proper disclaimers to the PTO. (Doc. No. 51-8 at 2.) The City submits no other evidence in support of this claim, and the unsworn hearsay statement of its counsel is insufficient to prove that TOGI's product specimens were not properly labeled. *See*

*Beyah v. Coughlin*, 789 F.2d 986, 990 (2d Cir. 1986); *see also Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 391 (S.D.N.Y. 1998). Moreover, the Use Agreement requires that the Cooking Oil Mark be accompanied by a disclaimer when used "on products, packaging, advertising, and promotional materials," but the City does not even address whether TOGI's trademark application constitutes use "on products" or "packaging" within the meaning of the Use Agreement. (Use Agreement § 3.04(a).) Accordingly, the City is not entitled to summary judgment on its claim that TOGI materially breached Section 3.04(a) of the Use Agreement in its submissions to the PTO.

Second, in its August 12, 2015 letter, the City accuses TOGI of selling "Tavern on the Green Central Park Signature Dipping Oil" without the requisite disclaimers. (Doc. No. 51-9 at 1.) The City attached to its letter, and has submitted to the Court, photographs of a bottle of "Central Park Signature Dipping Oil" which plainly reveal that the the bottle lacks any language disclaiming an association with the Tavern on the Green restaurant in New York City as required by Section 3.04(a). (*Id.*) TOGI does not contest the accuracy of the photographs. However, the Use Agreement explicitly permits TOGI to "sell off . . . [its] current stock of salad dressings, oils, and marinades" carrying the Cooking Oil Mark. (Use Agreement § 3.04(c).) In his declaration in opposition to the City's supplemental Rule 56.1 Statement, Defendant's Managing Partner Lou Bivona attests that "[a]ll dipping oils labeled with 'Central Park' sold by TOGI were inventory [TOGI] had when [it] entered into the Use Agreement," and that TOGI made "no other uses of" the term "Central Park" in connection with salad or dipping oil after it entered into the Use Agreement. (Doc. No.

77 ¶ 9.) Given this disputed issue of fact, summary judgment is clearly improper on this alleged breach of Section 3.04(a).

b. Alleged Violations Concerning the Restaurant Mark

The City next alleges that TOGI breached the Use Agreement by referring to the fame and success of the [Tavern on the Green] restaurant" in promotional materials. (Pl. Mem. at 17.) Specifically, the City contends that statements made on TOGI's behalf violated Section 2.04(c) of the Use Agreement, which bars TOGI from "mention[ing] Central Park" or using any "pictures of other depictions of Central Park or any Central Park structures, including pictures or other depictions of the Central Park Location," without the City's consent. Although the parties have not included many of the actual challenged promotional materials in the record, the available documents establish that TOGI violated the Use Agreement.

First, in a March 18, 2016 email to TOGI's attorney, the City described supposedly-improper "references in . . . sales materials to the success of the operation of the restaurant in Central Park . . . and the brand recognition associated with the name [Tavern on the Green]." (Doc. No. 51-10 at 1.) TOGI admitted in its April 5, 2016 response that it referred to the Central Park Location in its promotional materials. (Doc. No. 51-11 ¶ 3 (admitting that TOGI used the statement "'Tavern on the Green branded' 'exclusive products' 'allow customers to experience the gourmet flavors and culinary experience of New York City's famous restaurant.'"). On April 13, 2016, the City wrote another letter to TOGI, again highlighting the company's improper use of the term "Tavern on the Green" and references to Central Park. (Doc. No. 51-

8

12.)  In that letter, the City informed TOGI that it was "revok[ing] its consent to use the Tavern on the Green mark for restaurant services and for products." (*Id.* at 4.)

Then, in August 2016, MBB – a restaurant franchise licensing agent retained by TOGI – published a blog post making repeated references to Central Park and the Central Park Location.[3] (Doc. No. 51 ¶ 27 (stating that a franchisee "will also benefit from the global appeal and recognition of that world famous restaurant located in Central Park in the City of New York").) On February 16, 2017, the City sent TOGI a letter highlighting these infringing statements and calling Defendant's attention to the following statement on MBB's website:  "Tavern on the Green invites patrons into a warm, celebratory gathering space that captures the spirit of Central Park and the energy of New York City." (Doc. No. 75 ¶ 30; Doc. No. 75-3.) That statement remained on MBB's website until at least July 27, 2018. (Doc. No. 75 ¶ 32; Doc. No. 75-4.)

TOGI's references to Central Park and the Central Park Location in its promotional materials plainly breach Section 2.04(c) of the Use Agreement.  In fact, TOGI even *admits* that the statements on the MBB website are not permitted under the contract. (Doc. No. 51-13 at 68:12–14.)  Further, it cannot be argued that TOGI's breaches were immaterial. *See Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004).  The purpose of the Use Agreement was to permit TOGI to develop its own "Tavern on the Green" business while avoiding any confusion with or association between TOGI's business and

---

[3] The City alternately refers to MBB as "MBB Productions LLC" (Doc. No. 51 ¶ 27) and "MBB Management" (Pl. Supp. 56.1 ¶ 27).

the Tavern on the Green restaurant in New York City.  (*See, e.g.*, Use Agreement § 6.01.)  By using the very language prohibited by the contract, TOGI deprived the City of this benefit.  And rather than curing its breach, Defendant has persisted in using the impermissible language well past the initiation of this litigation.

Accordingly, the City's entitlement to summary judgment turns on whether it has complied with its obligations under the Use Agreement.  To that end, TOGI argues that the City failed to live up to the notice and cure provision in Section 12.02. (Def. 56.1 ¶ 16; *see also* Doc. No. 49-1 ¶ 16.) Section 12.02 provides:

> In the event of a breach [of Section 2.04(c)] . . . the City shall provide written notice to [TOGI] of such breach, and if [TOGI] does not cure such breach within twenty (20) business days after [TOGI's] receipt of written notice . . . [the City] may provide written notice to [TOGI] immediately terminating [the Use Agreement] and/or [the City's] consent to use the [Restaurant Mark] with regard to the particular goods or services that are the subject of the breach and/or [the City] may take such other enforcement actions as it deems appropriate to protect its interests, including but not limited to, filing an action for trademark infringement.

Thus, Section 12.02 requires the City to provide TOGI with notice of any material breach and a twenty business day opportunity to cure.  Following the expiration of that cure period, the City is permitted to either (1) send TOGI a letter revoking, in whole or in part, TOGI's consent to use the trademarks specified in

the Use Agreement or (2) take any other enforcement actions it wishes – including filing a lawsuit.

Here, the record is clear that the City first gave notice of TOGI's improper use of the Restaurant Mark in a March 18, 2016 email from Singleton to an attorney for TOGI. (Doc. No. 51-10.) In that email, Singleton informed TOGI that its "current marketing materials" were in violation of the Use Agreement because they made "improper "references . . . to the success of the operation of the [Central Park Location]." (*Id.* at 1.) In its April 5, 2016 response, TOGI attempted to explain away some, but not all, of the issues highlighted by the City, but did not dispute the accuracy of the City's recitation of the statements made in TOGI's marketing materials. (Doc. No. 51-11.) On April 13, 2016, less than twenty business days after its first email, the City sent TOGI a letter purporting to revoke TOGI's right to use the Restaurant Mark. (Doc. No. 51-12 at 4.) As a result, TOGI now argues that the City did not comply with the clear text of Section 12.02.

However, as noted above, Section 12.02 does not *require* the City to send TOGI a second letter formally revoking TOGI's consent to use the Tavern on the Green mark before filing a lawsuit. Instead, the Use Agreement permits the City to simply file a lawsuit following the expiration of the twenty business day cure period. And that is precisely what the City did in bringing this suit, which it initiated 235 business days after the March 18, 2016 email (and 217 business days after the April 13, 2016 follow-up letter). Accordingly, there can be no dispute that the City provided TOGI with the required opportunity to cure the breaches identified in the March 18, 2016 and April 13, 2016 letters, and that TOGI failed to do so. Accordingly, the City has complied with

Section 12.02 and is therefore entitled to summary judgment on its claim that TOGI breached Section 2.04(c) of the Use Agreement in connection with its 2016 marketing materials.

The same cannot be said, however, with respect to the City's February 16, 2017 letter. (Doc. No. 75-3.) In that letter, the City notified TOGI for the first time that it considered MBB's statements (which were made on TOGI's behalf) to be a material breach of Section 2.04(c). (*See id.* at 2 ("It is hard to imagine a more clear-cut violation of the plain language of Section 2.04(c).").) However, rather than waiting twenty business days to allow TOGI to cure its breach, the City initiated this suit on February 24, 2017 – just eight business days later. Thus, when the City filed this suit, it had not satisfied the twenty-business-day notice and cure requirement provided for in Section 12.02.

Normally, under New York law, a party's failure to comply with an express condition precedent to suit is fatal to the party's claim. *See MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec.*, No. 12-cv-7322 (PKC), 2015 WL 764665, at *7–8 (S.D.N.Y. Jan. 9, 2015). However, the law is clear that "[p]roviding notice and cure is not required where it would be futile." *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93-cv-4001 (NRB), 2000 WL 1006236, at *3 (S.D.N.Y. July 20, 2000); *see also Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (noting that under New York law, "a party to a contract may be precluded from insisting on strict compliance by conduct amounting to a waiver or estoppel") (quoting *Peter A. Camilli & Sons, Inc. v. State*, 245 N.Y.S.2d 521, 527 (N.Y. Ct. Cl. 1963))).

Here, there was no need to wait for twenty business days in light of TOGI's insistence that "[a]ll the statements" on the MBB website were "in full conformity with the Use Agreement." (Doc. No. 55-1 ¶ 22.) But more importantly, TOGI's continued infringement even *after* the suit was commenced makes clear that TOGI never would have availed itself of the opportunity to cure provided in Section 12.02. Indeed, the MBB website persisted in posting the prohibited statements as late as July 27, 2018 (Doc. No. 75-4) – more than a year after the initiation of this suit. *See Wolff & Munier,* 946 F.2d at 1009 ("[S]trict adherence to the . . . cure provision would have been a 'useless act' in the face of [continued breach]."); *see also Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.,* 522 N.Y.S.2d 292, 293 (3d Dep't 1987) ("[W]here it becomes clear that one party will not live up to a contract, the aggrieved party is relieved from the performance of futile acts or conditions precedent."). As a result, the Court is persuaded that the City's failure to comply with Section 12.02's notice and cure provision is excused and that TOGI is liable for breaching Section 2.04(c) of the Use Agreement.

### c. Remedies

Because the City has satisfied the elements of its breach of contract claim (at least in connection with TOGI's breach of Section 2.04(c)), the City is entitled to judgment as to liability on that claim. However, because the City has not proven what, if any, damages it suffered, the Court will hold an inquest regarding the damages that are appropriate in this case.

The City is also entitled to injunctive relief. Although injunctions are uncommon in suits for breach of contract, such relief

may be appropriate in cases where a plaintiff shows irreparable injury. *See Sasson Jeans, Inc. v. Sasson Jeans, L.A., Inc.,* 632 F. Supp. 1525, 1530 (S.D.N.Y. 1986). Because the contract at issue here involves intellectual property rights in valuable trademarks, and because the parties have agreed that in the event of a breach by TOGI, "the City will suffer immediate and irreparable injury" (Use Agreement § 12.04), the Court is persuaded that injunctive relief is clearly appropriate. *See Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006). Nevertheless, the precise scope of that relief will be determined in the forthcoming damages proceeding.

### 2. TOGI's Breach of Contract Claims

In its counterclaim, TOGI asserts that the City breached the covenant of good faith and fair dealing during the term of the Use Agreement. Specifically, TOGI contends that the City's attorney, Gerald Singleton, told TOGI's owner and managing partner Louis Bivona that the City "fully intended to prevent us from operating under the Use Agreement, and stated often his intent to 'shut us down' and prevent our enjoyment of the rights we purchased under the Use Agreement." (Doc. No. 49-1 ¶ 23.) Further, Bivona claims that Singleton "has told me often that we cannot sell franchises for restaurants under the Tavern on the Green name, and we cannot in any way acknowledge the iconic Tavern on the Green restaurant ever existed in New York City." (*Id.*) Finally, Bivona asserts that Singleton told him that TOGI "must conform to [Singleton's] demands and that if we do as he demands . . . there really is no value to the Tavern on the Green name and the Use Agreement [TOGI] purchased in bankruptcy. (*Id.*) Bivona contends that as a result, TOGI could not, "under the franchising laws of various states[,] offer

franchises for Tavern on the Green restaurants without disclosing the extent" of Singleton's conduct, thereby "causing [TOGI] to lose its investments in such efforts of over 4 [m]illion dollars . . . and the payment of 1.3 [m]illion dollars . . . to the bankruptcy court." (*Id.* ¶ 24.) But Bivona's assertion that the City's conduct "caus[ed]" TOGI "to lose its investments" in its franchising efforts (*id.*), made without reference to supporting evidence, is wholly conclusory and insufficient to demonstrate a genuine issue of material fact for trial. *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 44 (2d Cir. 2015). Moreover, Singleton disputes Bivona's account of events and denies that he made any of the statements attributed to him. (Doc. No. 53 ¶ 24.)

But even assuming that Singleton made the statements Bivona attributes to him, TOGI's good faith and fair dealing counterclaim must still be dismissed. As noted above, the implied covenant of good faith and fair dealing is breached only when a party takes "actions" to impair the other party's rights under the contract. *LJL 33rd Street*, 725 F.3d at 195. Therefore, it is not breached by a party's statements, even ill-tempered ones, regarding the scope of an agreement. *See Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 494–95 (S.D.N.Y. 2013). Accordingly, the fact that Singleton took a narrow view of the Use Agreement is not enough to establish that the City breached the duty of good faith and fair dealing implied therein.

The City is also entitled to summary judgment on TOGI's counterclaim that the City breached Sections 2.04(f) and 11.02 of the Use Agreement by opposing TOGI's attempt to register a trademark in the phrase "Tavern on the Green." (*See* Def. 56.1 ¶ 21.) Sections 2.04(f) and 11.02 of the Use

Agreement – among other provisions – govern the parties' respective conduct in connection with TOGI's attempt to register trademarks involving the phrase "Tavern on the Green." In relevant part, Section 2.04(f) provides that "the City shall not object to or file any opposition to an application by [TOGI] for a United States . . . trademark registration for a Concurrent User's Mark." The Use Agreement defines the term "Concurrent User's Mark" as the phrase "Tavern on the Green," "when such words are combined with and accompanied by differentiating language in the nature of a geographic or location identifier . . . and used for restaurant, bar and catering services." (Use Agreement §§ 1.08, 1.10.) Section 11.02 supplements the City's duty not to oppose the registration of a "Concurrent User's Mark," obliging it to assist TOGI in obtaining the registration of a "Concurrent User's Mark" if any such registration is refused because of "the existence of an application or registration filed by [the City]."

As noted above, TOGI applied to register "Tavern on the Green" in connection with salad dressing and cooking oils on February 25, 2016, only to have the City oppose the registration on December 13, 2016. U.S. Trademark Reg. No. 86,919,319. Because TOGI's registration addressed cooking oils, it is unclear why Section 2.04(f), which governs TOGI's right to register the phrase "Tavern on the Green" in connection with "restaurant, bar and catering services," is at all applicable. (Use Agreement § 1.08.) Rather, TOGI's counterclaim sounds more appropriately in Section 3.02 of the Use Agreement, which addresses TOGI's right to register "Product Marks." Curiously, TOGI does not raise that provision in any of its papers, and the Court declines to consider it. And to the extent TOGI does seek to rely on Section

12

2.04(f), its claim plainly fails. The record makes clear that the application included no "geographic or location identifier" whatsoever; TOGI merely attempted to register the phrase "Tavern on the Green." U.S. Trademark Application Serial No. 86,919,319. As such, TOGI did not attempt to register a "Concurrent User's Mark," as that term is defined in the Use Agreement. Thus, Section 2.04(f)'s mandate that the City not oppose "any application . . . for a United States . . . trademark registration for a Concurrent User's Mark" is inapplicable.

Section 11.02 likewise provides no support for TOGI's breach of contract theory, since Plaintiff's obligations under Section 11.02 are triggered by the refusal of a trademark registration based on the existence of a different application or registration by the City. Given that TOGI's application remains pending, *see* U.S. Trademark Application Serial No. 86,919,319, there is no basis for asserting a breach by the City.

Thus, TOGI's theory that the City breached Sections 2.04(f) and 11.02 of the Use Agreement is not viable, and summary judgment must be entered in the City's favor.

### C.  Trademark Claims

The City next seeks summary judgment on its trademark claims – Counts II (Infringement of [a] Registered Mark) (Compl. ¶¶ 44–51), III (False Designation of Origin in Violation of 15 U.S.C. § 1125(a)) (*id.* ¶¶ 52–55), and IV (Dilution in Violation of 15 U.S.C. § 1125(c)) (*id.* ¶¶ 56–60). Although TOGI does not oppose the City's motion on the trademark claims, the Court must nevertheless determine whether the elements of the City's claims are met. *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)

("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). The Court will therefore address the City's claim.

### 1.  Infringement of a Registered Mark

The City first contends that TOGI infringed its registered trademark, in violation of 15 U.S.C. § 1114(a)(1), when it "offer[ed] restaurant franchises that are not affiliated with the City without the consent of the City." (Pl. Mem. at 11). To recover under Section § 1114(1)(a), the City must prove (1) that its federally-registered mark is entitled to protection and (2) that TOGI's use of its mark "is likely to cause consumers confusion as to the origin or sponsorship of the junior user's goods." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016).

Here, there is no dispute that the Restaurant Mark is federally registered (*see* Pl. 56.1 ¶ 5), which creates a presumption that the Restaurant Mark is valid, 15 U.S.C. § 1115(a). And since TOGI does nothing to rebut this presumption, the first element of the City's Section 1114 claim is met.

As to the second element of the City's claim, the Use Agreement provides that in a suit for trademark infringement, "a likelihood of consumer confusion shall be presumed to exist." (Use Agreement § 12.02.) Again, TOGI does not attempt to defeat this presumption, which is plainly confirmed by the record. *See Morex S.P.A. v. Design Inst. Am., Inc.*, No. 84-cv-607 (CMM), 1986 WL 5518, at *2 (S.D.N.Y. May 8, 1986); *see also Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x 476, 479 (9th Cir. 2017) (affirming the entry of summary judgment where defendants "offer[ed] no evidence to rebut . . . the presumption of a

likelihood of confusion"). Accordingly, the second element of the City's trademark infringement claim is also satisfied, and the City is entitled to summary judgment on the question of TOGI's liability for trademark infringement.

However, the City is not entitled to summary judgment on the damages element of its trademark infringement claim. Once again, the City has offered no evidence to establish what, if any, damages it suffered as a result of TOGI's trademark infringement. Instead, the Court will address the City's damages at the inquest proceeding discussed above.

### 2. False Designation of Origin

The City's next cause of action – Count III – arises under 15 U.S.C. § 1125(a). The City does not separately address this claim in its summary judgment papers, but this claim overlaps entirely with its Section 1114 claim. *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) ("It is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)."). Accordingly, on this claim as well, the City is entitled to summary judgment as to liability but not as to damages.

### 3. Dilution

The City also moves for summary judgment on its claim for dilution under Section 1125(c). "To prevail on a federal trademark dilution claim, a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution through . . .

blurring." *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11-cv-8921 (DAB), 2013 WL 6670584, at *6 (S.D.N.Y. Mar. 29, 2013). Here, the parties do not dispute that the mark is "famous" – the City asserts as much in its brief (Pl. Mem. at 22) and TOGI does nothing to contradict that assertion. The second element is also plainly satisfied – TOGI uses (or at least has used) the Restaurant Mark and Cooking Oil Mark in commerce. As for the third element, blurring "is an 'association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the mark.'" *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (quoting 15 U.S.C. § 1125(c)(2)(B)). Given the parties' stipulation in the Use Agreement that a "likelihood of consumer confusion shall be presumed to exist" in the event of a breach, there can be little question that the parties' use of the exact same name to refer to different sources of similar products (*i.e.*, restaurant services) will amount to dilution by blurring. *See Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 459 (S.D.N.Y. 2017) (summarizing the various factors related to the blurring inquiry).

As with its other trademark claims, the City has not proven the amount of damages that it suffered as a result of TOGI's conduct, but may attempt to do so in the later proceeding.

### D. State Law Claims

The City also moves for summary judgment as to its two state-law claims, Counts V and VI (*see* Compl. ¶¶ 61–68), though it addresses both theories only in the "Summary of Argument" portion of its brief.

The City first asserts that it is entitled to summary judgment on Count V, its common law unfair competition claim, because, in

14

New York, "[t]he elements necessary to prevail on common law causes of action for trademark infringement and unfair competition mirror the Lanham Act claims." (Pl. Mem. at 12.) But the City's rendition of the law is incomplete. To prevail on a claim for unfair competition under New York law, a plaintiff must show not only a likelihood of confusion, but also "bad faith on the part of the defendants." *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012); *see also Jeffrey Milstein, Inc. v. Gregor, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995); *Brook v. Peconic Bay Med. Ctr.*, 59 N.Y.S.3d 310, 313 (1st Dep't 2017). Nevertheless, in light of TOGI's continued use of the "Tavern on the Green" phrase in ways plainly not authorized by the Use Agreement, there can be no doubt that TOGI acted in bad faith and that the City is therefore entitled to summary judgment as to liability on Count V. *See C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013) ("Here, [defendant] . . . acted in . . . bad faith by intentionally using [plaintiff's] trademark on products it marketed even after it lost the legal authority to do so."). Again, the Court will address damages in a subsequent inquest.

As for Count VI, the City contends that, by "engaging in . . . false and misleading marketing, via a website accessible to consumers in New York," TOGI has violated New York General Business Law Sections 349, 350, and 350(e). (Pl. Mem. at 12.) Although the City does not clarify the "website" to which it refers, this claim appears to be based on the statements made on the MBB Management website. But to prove a violation of Section 349, the City must also establish "specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543

(S.D.N.Y. 2012) (quoting *MyPlayCity, Inc. v. Conduit, Ltd.*, No. 10-cv-1615 (CM), 2012 WL 1107648, at *15 (S.D.N.Y. Mar. 30, 2012)). This the City fails to do entirely. Likewise, to prevail on its General Business Law Section 350 claim, the City must prove harm to the public interest. *Id.* at 542; *see also New World Sols. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 331 (S.D.N.Y. 2015). Once again, the City has not explained how the general public interest – as opposed to the City's private economic interest as a market participant – was harmed by TOGI's conduct. Consequently, summary judgment must be denied as to the City's General Business Law claim.

## IV. CONCLUSION

For the reasons set forth above, the City's motion for summary judgment is GRANTED as to liability on Counts I (limited to Section 2.04(c) of the Use Agreement), II, III, IV, and V. The City is entitled to injunctive relief in connection with Count I. The Court will determine the scope of that injunctive relief, as well as the City's entitlement to damages, in a subsequent inquest proceeding. The City's motion for summary judgment is DENIED as to Count I (with respect to Section 3.04 of the Use Agreement) and as to Count VI.

Further, the City is entitled to summary judgment on TOGI's counterclaim for breach of contract and breach of the implied duty of good faith and fair dealing. Accordingly, TOGI's motion for summary judgment is DENIED and judgment is entered in favor of the City as to TOGI's counterclaim.

IT IS HEREBY ORDERED that, within two weeks of the date of this order, the parties shall submit a joint letter proposing the next steps in this litigation. The parties' letter shall address whether the City wishes

to proceed to trial on its remaining claims, the nature of the inquest proceeding that will be held with respect to injunctive relief and damages, and the evidence that will be presented at that proceeding.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 50 and 62.

SO ORDERED.


_____
RICHARD J. SULLIVAN
United States District Judge

Dated: September 28, 2018
       New York, New York

                 *     *     *

Plaintiff, the City of New York, is represented by Gerald E. Singleton of the New York City Law Department, 100 Church Street, New York, New York 10007.

Defendant Tavern on the Green International, LLC is represented by Gerard F. Dunne, Law Office of Gerard F. Dunne, P.C., 156 Fifth Avenue, Suite 1223, New York, New York, 10010.